UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELILAH P.,<br><br>                 Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO, Acting<br>Commissioner of Social Security,[1]<br><br>                 Defendant. | Case No.: 25-cv-00320-DMS-JLB<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MERITS BRIEF**<br><br>**[ECF No. 12]** |

This Report and Recommendation is submitted to the Honorable Dana M. Sabraw, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.2(d) of the United States District Court for the Southern District of California.

On February 11, 2025, plaintiff Delilah P. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social

---

[1] Frank J. Bisignano, the new Acting Commissioner of Social Security as of May 6, 2025, is hereby substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d).

Security (the "Commissioner") denying her application for disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision is Plaintiff's merits brief. (ECF No. 12.)  The Commissioner filed an opposition (ECF No. 15), and Plaintiff filed a reply (ECF No. 16).  For the reasons set forth herein, the Court **RECOMMENDS** that Plaintiff's merits brief be **GRANTED**, and that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.     PROCEDURAL BACKGROUND

On or around August 1, 2022, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, alleging disability beginning July 5, 2018.  (Certified Administrative Record ["AR"], at 307–22.) After her applications were denied initially and upon reconsideration (AR 177–82, 190–96), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR 197).  An administrative hearing was held on February 6, 2024.  (AR 35–51.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well as from a vocational expert ("VE").  (AR 35–51.)  A second administrative hearing before an ALJ was held on October 29, 2024.  (AR 52–66.)  Plaintiff appeared at the second hearing with counsel, and testimony was taken from her, as well as from a VE.  (AR 52–66.)

As reflected in his December 27, 2024, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 5, 2018, through the date of decision.  (AR 14–34.)  The ALJ's decision became the final decision of the Commissioner on January 17, 2025, when the Appeals Council denied Plaintiff's request for review.  (AR 1–6.)  This timely civil action followed.

//

//

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 5, 2018, the alleged onset date.  (AR 20.)

At step two, the ALJ found that Plaintiff had the following severe impairments: mood disorder with depressive and bi-polar traits; anxiety; diabetes; tachycardia; lumbar spondylosis with back pain; and vertigo.  (AR 20.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 21–22.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform medium work" with the following limitations:

> she can occasionally climb ramps or stairs; rarely climb ladders; never climb ropes or scaffolding; frequently balance, stop or crouch; occasionally kneel or crawl; no work at unprotected heights or around dangerous moving machinery; limited to work involving simple routine tasks and up to occasional interactions with supervisors, coworkers or the public; and requires a stable and habitual work environment.

(AR 22.)

For purposes of his step four determination, the ALJ determined that Plaintiff has no past relevant work.  (AR 26.)

At step five, based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*e.g.*, Laundry Worker II, Pie Bakery Laborer, Sandwich Maker, Price Marker, Housekeeping Cleaner, Office Helper), the ALJ found that Plaintiff was not disabled under the law from July 5, 2018, through the date of decision. (AR 27–28.)

//

25-cv-00320-DMS-JLB

## III.   PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

1.      Whether the ALJ erred in evaluating Plaintiff's subjective symptom statements; and

2.      Whether the ALJ erred in evaluating the medical opinion of R. Paxton M.D. and erred by failing to address and incorporate the unrejected limitations identified by Dr. Paxton in the RFC.  (ECF No. 12 at 4.)

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V.   DISCUSSION

### A.   The ALJ Did Not Err in Assessing the Medical Opinion of Dr. Paxton and the RFC.

Plaintiff argues that the ALJ did not adequately explain the supportability and consistency factors in addressing the medical opinions of State Agency Mental Consultant R. Paxton M.D.  (ECF No. 12 at 12.)  Specifically, Plaintiff argues that the ALJ failed to appropriately address Dr. Paxton's opinions that Plaintiff has moderate limitations in the

4

following areas: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) the ability to sustain an ordinary routine without special supervision. (*Id.* 12–14 (citing AR 85–86, 110–11).) Plaintiff further argues that because the ALJ left these limitations unaddressed, they were not rejected and the ALJ erred by failing to incorporate them into Plaintiff's RFC. (*Id.* at 13–15.)

In response, the Commissioner argues that the ALJ's RFC is valid, supported by substantial evidence, and should be upheld. (ECF No. 15 at 7–11.) The Commissioner argues that the RFC is consistent with Dr. Paxton's finding that Plaintiff had moderate mental limitations, as "the agency considers even moderate limitations to mean that the claimant has a fair ability to function independently, appropriately, or effectively on a sustained basis in the functional area." (*Id.* at 8–9.) The Commissioner further argues that "Ninth Circuit precedent holds that a limitation to simple tasks adequately captures a moderate limitation in concentration, persistence, and pace." (*Id.* at 9–10 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).)

### 1.   Applicable Law

Under the revised regulations which apply to claims, such as this one, filed on or after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinions in the record and articulate in the decision his or her assessment as to each. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). In evaluating the persuasiveness of a medical opinion, an ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, purpose, and extent of the treatment relationship, frequency of examinations, and examining relationship; (4) specialization; and (5) any other factors that tend to support or contradict the medical opinion, including familiarity with the other evidence in the claim. *See id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Although an ALJ must consider all these factors, the only factors that the ALJ is required to discuss in his or her opinion are supportability and consistency, unless two conflicting

medical opinions are both equally well-supported and consistent with the record. *See id.* §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

In evaluating the persuasiveness of medical opinions, the "most important factors" are "supportability" and "consistency." *See id.* §§ 404.1520c(a), 416.920c(a); *see also Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ must "articulate . . . how persuasive" he or she finds "all of the medical opinions" from each doctor or other source, and "explain how [her or she] considered the supportability and consistency factors" in reaching these findings. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating a claimant's mental impairments, an ALJ must follow a special technique. *Id.* §§ 404.1520a(a), 416.920a(a). As part of the special technique, an ALJ will rate the claimant's degree of limitation in the following four broad functional areas, also known as the "paragraph B" criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3); *see also id.* § Pt. 404, Subpt. P, App. 1, § 12.00(E). The ALJ will use the following five-point scale to rate the degree of limitation: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4).

A claimant's RFC "is the most [a claimant] can do despite [his or her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The ALJ is "responsible for assessing [the RFC]." 20 C.F.R. §§ 404.1546(c), 416.946(c). The ALJ must determine a

claimant's RFC "based on all of the relevant medical and other evidence," and will consider "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations" provided by the plaintiff and other non-medical sources. *Id.* §§ 404.1545(a)(3), 416.946(a)(3); *Laborin*, 867 F.3d at 1153.

### 2. Relevant Facts

On January 20, 2023, Dr. Paxton completed a Psychiatric Review Technique on initial review of Plaintiff's applications and assessed the paragraph B criteria as follows: Plaintiff would have mild limitations in interacting with others and adapting or managing oneself and moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace.  (AR 80, 105.)

In assessing Plaintiff's Mental RFC, Dr. Paxton opined that Plaintiff is able to remember and understand simple instructions, but she would have moderate limitations performing detailed and complex tasks.  (AR 85, 110.)  Dr. Paxton further opined that Plaintiff has "sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed."  (AR 86, 111.)  Lastly, Dr. Paxton opined that Plaintiff would be able to interact appropriately with co-workers and supervisors and adapt to work setting with occasional public contact.  (AR 87, 112.)

In assessing the paragraph B criteria, the ALJ found the following:

> In understanding, remembering or applying information, the claimant has a mild limitation.  In interacting with others, the claimant has a moderate limitation.  With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.  As for adapting or managing oneself, the claimant has experienced a moderate limitation.

(AR 21.)

Therefore, in assessing the paragraph B criteria, the ALJ found that Plaintiff had greater limitations than those assessed by Dr. Paxton in adapting or managing oneself and interacting with others.  The only way in which the ALJ rejected the opinion of Dr. Paxton

was that the ALJ found only mild, as opposed to moderate, limitation in understanding, remembering, or applying information.

In addressing Dr. Paxton's opinion, the ALJ stated:

R. Paxton, M.D., initial level DDS mental consultant, and Anna Franco, Psy.D., reconsideration level DDS mental consultant, assessed the claimant is able to remember and understand simple instructions, sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed, able to interact appropriately with co-workers and supervisors, and able to adapt to work setting with occasional public contact (1A/2A, 5A/6A). The undersigned finds these opinions, which each find some moderate level mental limitations, substantially (but not fully) persuasive, as they are mostly supported by and consistent with the record including the history of emergency department visits and mental health follow-up of medication and therapy (4F/599, 606, 8F 12F, 14F, 17F). The undersigned, somewhat more restrictively, finds the record supports the paragraph B criteria findings as set forth above, and the significant mental restrictions in the residual functional capacity limiting the claimant to work in a stable and habitual environment involving simple routine tasks, occasional work-related interactions with supervisors, coworkers or the public.

(AR 26.)

### 3. Analysis

As Plaintiff recognized in her merits brief, "'[t]he ALJ is [] responsible for resolving ambiguities' and conflicts in the evidence." (ECF No. 12 at 13 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Moreover, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ must resolve conflicts between medical opinions and may look to the level of explanation for the various opinions to resolve conflicts).

Here, the ALJ relied on Dr. Paxton's narrative opinions rather than relying on each individual checklist-style sub-opinion. In assessing Plaintiff's sustained concentration and

persistence limitations, Dr. Paxton assessed no more than moderate limitations, which is consistent with the ALJ's decision. (AR 21, 85–86.) When asked to "[e]xplain in narrative form [Plaintiff's] sustained concentration and persistence capacities and/or limitations," Dr. Paxton stated, "[Plaintiff] has sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed." (AR 86, 111.) The ALJ relied on this narrative in assessing Dr. Paxton's opinion and in formulating the RFC.   The Court finds no error in the ALJ's decision to do so. *See, e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (holding "the ALJ's decision primarily to rely on Dr. Patton's specific statements regarding [the claimaint's] limitations, rather than his summary agreement with Dr. Horowitz, was rational, and we will not disturb it"); *Rounds*, 807 F.3d at 1006 ("An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations."). As stated on the form itself, while the "questions . . . help determine the individual's ability to perform sustained work activities[,] . . . the actual mental [RFC] assessment is recorded in the narrative discussion(s)." (AR 84, 109.)

Plaintiff argues that the ALJ should have specifically addressed Dr. Paxton's sub-opinions that Plaintiff was moderately limited in her ability to (1) to maintain attention and concentration for extended periods, (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (3) sustain an ordinary routine without special supervision. (ECF No. 12 at 12–14 (citing AR 85–86, 110–11).) However, Dr. Paxton did not include any of these specific limitations in his narrative assessment. Instead, Dr. Paxton stated that Plaintiff could maintain adequate attention, concentration, persistence, and pace "as needed" so long as she was limited to simple instructions. (AR 86, 111.) Dr. Paxton's omission of further restrictions in his narrative is consistent with another sub-opinion that Plaintiff was not significantly limited in her "ability to complete a normal workday and workweek without interruption from

25-cv-00320-DMS-JLB

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 86.)[2]

Given the foregoing, the Court finds that the ALJ's decision to rely on Dr. Paxton's narrative opinions was rational. The ALJ either incorporated these opinions into the RFC or incorporated more restrictive limitations. Therefore, the Court concludes that the ALJ did not err in assessing the opinion of Dr. Paxton and incorporating it into the RFC.

**B.      The ALJ Erred in Rejecting Plaintiff's Symptom Testimony.**

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (ECF No. 12 at 5–10.) The Commissioner argues in response that the ALJ reasonably discounted Plaintiff's report of completely debilitating symptoms. (ECF No. 15 at 2–7.)

1.      Plaintiff's Symptom Testimony

During the first hearing on February 6, 2024, Plaintiff testified that she lives with her youngest son who has high-functioning autism. (AR 40.) She has to "cue him on everything" and constantly watch over him. (AR 40–41.) She cooks for him and helps him clean, but she does not physically assist him in his personal care anymore. (AR 41.)

Plaintiff testified that it is hard for her to be on her feet to clean her house and take care of her son due to her back and hip injury and her diabetes. (AR 43–44, 50.) She orders her groceries online to be delivered and primarily leaves the house to attend doctor's appointments. (AR 45.) Plaintiff stated she is not living her normal life as before and does not go places because she feels so sick. (AR 45.)

---

[2]      Additionally, in a narrative format following his Psychiatric Review Technique assessment, Dr. Paxton similarly stated: "Claimant is able to remember and understand simple instructions. Claimant would have moderate limitations performing detailed and complex tasks. Claimant has sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed." (AR 80, 105.)

A second hearing was held on October 29, 2024, after Plaintiff had a physical consultative examination.  (*See* AR 3983–94.)  Plaintiff reported that she felt everything was getting worse due to not being able to see a specialist and change medications and not being able to eat.  (AR 60.)

In Plaintiff's Function Report dated September 26, 2022, she reports that her bipolar disorder makes it very difficult to function each day and to be at a workplace on time each day.  (AR 417.)  She also claims her anxiety and depression are paralyzing a lot of the time.  (AR 417.)  Physically, Plaintiff states that her back and hip injury and pain from arthritis and diabetes make her sick and make it hard to function like she used to.  (AR 417.)

Plaintiff states that she does not do much on a daily basis.  (AR 418.)  She cooks simple meals for her son and spends time with him.  (AR 418.)  She takes her son and dog to the park.  (AR 418.)  She will also do light cleaning in the house two to three times a week but needs to take breaks and sit down every five to ten minutes.  (AR 418.)  She reports no problems with personal care.  (AR 418.)

Plaintiff drives but does not go shopping in stores.  (AR 420.)  She claims she used to go out dancing and have a lot of fun, but she does not have a social life or hobbies anymore.  (AR 420.)  She can walk about half a block before she needs to rest for five to ten minutes.  (AR 422.)  Plaintiff's Function Report dated October 7, 2022, reports similar daily activities.  (AR 427–34.)

In a letter to the ALJ, dated October 21, 2024, which the ALJ received before the second hearing, Plaintiff states the following:

> My daily routine now is severe panic attacks wake me up. My heart racing and shaking and having to run to the bathroom. For the first 2 hours once I wake and take my morning meds. I have to walk my dogs feeling like passing out. My diabetes is still out of control. The diabetic gastro perosis I can only handle yogurt and oatmeal baby type food. I feel so severely dehydrated and depleted. Severe fatigue. I don't go anywhere but force myself to go to doctor appts. I have to order everything online to be delivered. Helping my 18 year old autistic son and walking our dogs takes every bit of energy I have. I can't sleep well because I can't eat enough food and my brain races. I sleep 5 to 6

25-cv-00320-DMS-JLB

hours a night. I feel like my body is infected and rotting. I can't focus or think right.

I do not feel human anymore.

I also have been experiencing vertigo and on severe days i cant move my head. I have to sit still until it stops. And im always dizzy in general.

. . .

Diabetes is so bad the past few years the doctors have had me on different meds and insulin. I lived in rehab for 3 months due to addiction to oxycodone for 5 yrs from the injury pain. Now I have to live with the pain. Even when I sleep. As I am no longer taking pain meds. Bipolar has a hold on me. Something is wrong with my brain. But I can't get rid of it and it gets worse. It has me paralyzed most days. I do not function anymore the way I use to. I have had several break down episodes with people in public that have verbally approached me wrong. Then I feel exhausted for days from the episodes. I cry alot and cant stop.... I try to avoid people.and conversations. I use to cope better but the past 5 yrs have been debilitating. The dispare and fear I have is so bad I don't know why I'm this way and I don't know how to fix it.

(AR 527.)

### 2. Applicable Law

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony").

The ALJ is responsible for "determin[ing] credibility, resolv[ing] conflicts in the testimony, and resolv[ing] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) (directing that the Commissioner's "findings . . . as to any fact, if supported by substantial evidence, shall be conclusive"). In assessing a claimant's credibility, the ALJ may consider, *inter alia*, (1) inconsistencies in the claimant's testimony or between her testimony and her conduct; (2) the claimant's daily living activities; (3) the claimant's work record; and (4) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002)[3]; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to engage in second-guessing. *See Thomas*, 278 F.3d at 959 (citation omitted); *see also Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not

---

[3]   The Court in *Thomas* also included the claimant's reputation for truthfulness as a consideration, but the SSA has since clarified that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *accord Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).

25-cv-00320-DMS-JLB

substitute our judgment for that of the ALJ.").  However, "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'"  *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103).  Because reviewing courts "cannot engage in such substitution or speculation, such error will usually not be harmless."  *Id.*  But the ALJ's reliance on other possibly erroneous credibility findings is harmless if the ALJ's conclusion on credibility is supported by other substantial evidence.  *See Carmickle*, 533 F.3d at 1162–63.

### 3.    ALJ's Opinion

The ALJ summarized Plaintiff's symptom testimony as follows:

> The claimant reported that she cannot work due to physical and mental conditions (2E, 3E, 18E).  In her adult function reports, she reported her bipolar makes it difficult to function (4E, 5E). She reported back pain and diabetes.  She reported difficulty with lift, walk, sit, stand, postural abilities, memory, completing tasks, concentration, and getting along with others.  In letters, the claimant reported seeking physical and mental care (l 5E, 25E). She reported panic attacks, out of control diabetes, needs groceries delivered, does not go anywhere and needs to force herself to go to doctor appointments. She reported helping her 18 year old autistic son and walking their dogs takes every bit of energy that she has.

(AR 23.)

In assessing Plaintiff's subjective symptom testimony, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 23.)  However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 23.) The ALJ provided the following reasons for rejecting the severity of Plaintiff's symptom testimony: (1) Plaintiff's "active range of activities";

(2) lack of objective evidence (i.e., normal physical and mental status examinations); and (3) improvement with medication.  (AR 25.)

### 4. <u>Analysis</u>

#### a. *Daily Activities*

First, the ALJ discounted Plaintiff's testimony regarding the severity of her symptoms by pointing to her "active range of activities."  (AR 25.)  "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."  *Ghanim*, 763 F.3d at 1165; *see also Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[I]nconsistent daily activities may provide a justification for rejecting symptom testimony[.]"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that a contradiction between a claimant's daily activities and his or her testimony is a ground for forming the basis of an adverse credibility determination).  In other words, a court may consider inconsistencies between a claimant's words and her actions.  *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").  However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant "does not need to be utterly incapacitated in order to be disabled." *Id.* (internal quotation marks and citation omitted).

Daily activities may also "be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603).  To meet this standard, the ALJ "must make 'specific findings relating to [the daily] activities' and their transferability [to a work setting] to

conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ stated that the "record notes an active range of activities," including "self-care independence, driving, caring for dogs and a special needs son" and "going to the beach, horseback riding and watching movies." (AR 25 (citing 12F/3, 14F/3).)  The ALJ contends that these activities "require at least basic mental and physical abilities." (AR 25.)

The first record cited by the ALJ is a Mental Evaluation by Psychologist dated December 29, 2022.  (Ex. 12F [AR 3790–93].)  Under the heading "Current Level of Functioning," Plaintiff self-reported:

> The claimant is able to take care of herself independently.  She can dress and bathe herself.  She does not have a caregiver.  She is being financially supported at this time through her son's Social Security income, as he has special needs, and child support from the son's father.  She is able to drive. She spends her days caring for her dogs and her special needs son.

(AR 3791.)

The second record cited by the ALJ is a Psychiatric Assessment dated February 5, 2023, completed by the County of San Diego Mental Health Services.  (Ex. 14F [AR 3804–15].)  Under the heading "Social [History]," Plaintiff self-reported:

> Born in Detroit.  Raised in CA.  Grew up with mother and grandmother.  Few years would ditch school.  Pregnant in 10th grade and dopped [sic] out of school.  Patient studied peds special needs children.  Living in apartment with son with special needs.  Single. Never married. 1 daughter 2 sons. Worked as clerk and CNA.  Unemployed.  Enjoys going to beach, horses, watching movies.

(AR 3806.)

Plaintiff argues that the ALJ mischaracterized the evidence.  (ECF No. 12 at 8.) First, Plaintiff argues that the notation that she "[e]njoys going to beach, horses, watching movies," does not indicate that she was actually doing any of those things.  (*Id.*)  Plaintiff contends that this was an isolated notation in a record that spans thousands of pages and

does not reflect her daily activities. (*Id.*) The Court agrees that this notation does not indicate, and there is no substantial evidence in the record to support, that Plaintiff was going to the beach, *riding* horses (as opposed to enjoying horses, as stated), and going out to the movies after her alleged onset date. Especially concerning is that the ALJ changed "enjoys horses" to "go[es] . . .horseback riding." (*See* AR 25, 3806.) The conclusion he draws, that these activities require "at least basic mental and physical abilities," is hard to reconcile with the physical and mental passivity of going to the beach, enjoying horses, and watching movies, even assuming Plaintiff's enjoyment of those activities continued into the alleged disability period.

Second, Plaintiff argues that the ALJ mischaracterized the record when relying on Plaintiff's ability to care for her dog. (ECF No. 12 at 8.) Plaintiff contends that the record reflects Plaintiff had difficulty caring for her dog, noting that she had to get rid of her dog because she was having difficulty taking care of him. (*Id.* (citing AR 1555, 1637–38, 2470).) However, the records cited by Plaintiff indicate that she gave away her dog in 2020 or 2021, which was prior to her reports in 2022–2024 that she regularly walked her dog and took him outside daily. In 2022, the third record cited by Plaintiff, she reported that she walked her dog a few times daily for twenty minutes. (AR 2470.) Therefore, the Court finds that the ALJ did not mischaracterize the record in this way.

Without consideration of the facts on which the ALJ relied that were based on a mischaracterization of the record, there is no clear and convincing evidence to reject the severity of Plaintiff's symptom testimony. The Court does not find that Plaintiff's ability to engage in limited self-care, drive, and care for her son and dog is a clear and convincing reason for rejecting the severity of her testimony. None of these activities, as Plaintiff reportedly performs them, translate into the ability to perform light[4] or medium work, and

---

[4] Although the ALJ determined Plaintiff had the ability to perform medium work in assessing the RFC, he also stated in his decision that the VE "testified that even if the claimant (now age 54) was assumed to be reduced to a light exertional level with

the ALJ did not make any specific finding as to transferability. The full range of both light and medium work "requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). As previously stated, daily activities may only "be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). There is no evidence in the record to suggest that Plaintiff spends a substantial part of her day engaged in activities that are transferable to light or medium work.

Accordingly, the Court finds this is not a clear and convincing reason supported by substantial evidence for rejecting the severity of Plaintiff's symptom testimony.

b.    *Improvement with Medication and Follow Up*

Next, the ALJ discounted Plaintiff's testimony regarding the severity of her symptoms on the basis that recent records indicate improvement in her mental symptoms with medication and follow up. (AR 25 (citing Ex. 17F).) The ALJ also noted that the record indicates that personal relationship stressors contribute to her mental health symptoms. (AR 25 (citing Ex. 17F/1 and et seq.).)

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (stating that "evidence of medical treatment successfully

---

limitation to only occasionally balance, stoop, and crouch, as well as kneel or crawl," there were still occupations existing in significant numbers in the national economy that claimant would be able to perform, such price marker, housekeeper cleaner, and office helper. (AR 27–28.)

relieving symptoms can undermine a claim of disability"). However, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* "Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." *Id.* at 1017–18.

Upon review of the record, the Court finds that the ALJ did not adequately take into consideration the waxing and waning of Plaintiff's mental health symptoms. In March 2023, Plaintiff presented with "symptoms of excessive worries, poor appetite, fatigue, anhedonia, lack of motivation, nightmares, difficulty staying asleep, mood swings, irritability, and impulsiveness." (AR 3979.) In addition to bipolar disorder, Plaintiff was diagnosed with moderate depression and mild anxiety, and she added Lamictal to her medication regime of Gabapentin, Sertraline, Prazosin, and Hydrozyine. (AR 3978–79.) In May 2023, Plaintiff reported improvement in her mood symptoms, but verbalized drowsiness from Hydroxyzine and expressed compulsions, i.e., thoughts of constantly checking her locks and talking to herself. (AR 3959.)

In June 2023, Plaintiff reported "good sleep at night" and "some improvement in her nightmares," but she "still complained of symptoms of depressed mood, poor appetite, lack [of] motivation, fatigue, mood swings, anhedonia, and sadness." (AR 3947.) Her physician reported her progress as minimal and increased the dosages of her medications. (AR 3937, 3950.) In July 2023, Plaintiff reported "good improvement in [her] sleep at night, appetite, fatigue, mood swings, motivation, and nightmares, with the dose increase[s] that were made to her meds." (AR 3937.) Her physician assessed her anxiety as severe and her depression as mild and noted "some progress." (AR 3940.)

25-cv-00320-DMS-JLB

In September 2023, Plaintiff continued to report "good improvement in her sleep, improved appetite, decreased fatigue, stable mood, improved motivation, and interest in fun activities." (AR 3927.)  She also "expressed improvement in her nightmares." (AR 3927.)  She still complained of anxiety symptoms but noted her current financial difficulties and family problems were factors affecting her anxiety. (AR 3927.)  Her physician noted "some progress." (AR 3930.)  In November 2023, Plaintiff "complained of increasing depression, anxiety, and fatigue," noting that she had not been consistent in taking her Lamictal and had been taking a lower dose of Sertraline. (AR 3916.)  Plaintiff reported good sleep and appetite, with improvement in her nightmares. (AR 3916.)  However, Plaintiff still complained of anxiety symptoms, noting that her current financial difficulties and family problems were affecting her anxiety. (AR 3916.)  Her progress was reported as minimal. (AR 3919.)

In January 2024, the final record with this provider, Plaintiff complained of depression, anxiety, lack of motivation, irritability, loss of appetite, self-isolation, sadness, mood swings, fearful thoughts, and excessive worry. (AR 3904.)  Plaintiff noted that financial and family problems affected her symptoms. (AR 3904.)  Plaintiff also complained of unwanted side effects to taking Lamictal, including dizziness and tachycardia. (AR 3904.)  Plaintiff claimed her mood swings and anxiety were severe and "scale 8/10 in severity." (AR 3904.)  Plaintiff was advised to avoid stressful situations to help alleviate her anxiety. (AR 3904.)  Plaintiff's physician assessed her with moderately severe depression and moderate anxiety and reported her progress as minimal. (AR 3907, 3910.)

The ALJ stated that "[t]he record indicates personal relationship stressors contribute to mental health symptoms." (AR 25 (citing Ex. 17F/1 and et seq.).)  However, the ALJ does not indicate which of Plaintiff's symptoms were "situational" and whether such symptoms were unlikely to persist once Plaintiff's relationship stressors abated. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (finding "the record supports the ALJ's conclusion that [the plaintiff's] mental health symptoms were situational, and so

20

unlikely to persist once [the plaintiff's] circumstances improved" in affirming the ALJ's rejection the plaintiff's subjective symptom testimony); *see also Lacie R. v. Berryhill*, No. 6:17-CV-1952-SI, 2019 WL 1919168, at *6 (D. Or. Apr. 30, 2019) (noting "an ALJ should not rely on the presence of situational stressors to downplay the impact of a mental health crisis on a claimant's ability to engage in basic work activities").

For the foregoing reasons, the Court finds this is not a clear and convincing reason supported by substantial evidence for rejecting the severity of Plaintiff's symptom testimony.

### c.    *Lack of Objective Evidence*

Lastly, the ALJ discounted Plaintiff's testimony regarding the severity of her symptoms on the basis that "[m]ost physical exams and mental status examinations throughout the extensive treatment records are mostly within normal limits. (AR 25 (citing Exs. 15F/36, 16F/16, 17F, 18F).)  Contradiction with the medical record is a permissible basis for rejecting a claimant's subjective symptom testimony.  *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *Carmickle*, 533 F.3d at 1161.

Upon review of the longitudinal record, while the Court finds that this was a clear and convincing reason supported by substantial evidence for rejecting the severity of Plaintiff's symptom testimony, "an ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'"  *Smartt*, 53 F.4th at 494–95 (quoting *Burch*, 400 F.3d at 681).  As the remaining reasons were insufficient, for the reasons discussed above, the Court finds that the ALJ erred in assessing Plaintiff's subjective symptom testimony.

//

//

//

//

21

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's merits brief be **GRANTED**, and that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall file specific written objections within **14 days** after being served with a copy of this Report and Recommendation.  *See* Fed. R. Civ. P. 72(b)(2).  The objections should be captioned "Objections to Report and Recommendation."  A party may respond to the other party's objections within **14 days** after being served with a copy of the objections.  *See id.*

**IT IS SO ORDERED.**

Dated:  February 25, 2026

Hon. Jill L. Burkhardt
United States Magistrate Judge